Susan Pryor v. James C. Hunter.

[Filed May 5, 1891.]

1. **Contract:** Consideration. Mutual promises are sufficient consideration to make a valid contract.

2. ———: Rescission. A party to a contract is not entitled to a rescission when he is unwilling to perform his part of the agreement.

3. ———: Evidence examined, and *held*, not sufficient to show that the plaintiff signed the contract under duress.

4. ———: Specific Performance. *Held*, That the defendant is entitled to a specific execution of the contract referred to in the opinion.

Appeal from the district court for Furnas county. Heard below before Cochran, J.

*C. B. Roberts*, and *J. P. Lindsay*, for appellant.

*A. Y. Wright*, *contra*, cited, as to what constitutes duress: Bishop, Contracts [1st Ed.], 239, 244–6; Maxwell, Pl. & Pr. [5th Ed.], 142; *Mundy v. Whittemore*, 15 Neb., 647, and cases; *Seiber v. Weiden*, 17 Id., 585; *Sanford v. Sornborger*, 26 Id., 295.

Norval, J.

This action was brought by Susan Pryor to annul a contract entered into between herself and the defendant, whereby she agreed to convey to him the southwest quarter of section 27, township 3 north, of range 24 west, in Furnas county.

The petition sets up three grounds for relief: First, want of consideration; second, failure to perform on the part of the defendant; third, duress in procuring the contract.

The defendant answered, admitting the execution of the contract, and denies all other allegations of the petition. The defendant avers in the answer that he has offered to perform all the conditions of the contract by him to be kept, and that the plaintiff refuses to execute the deed. He prays that the plaintiff be required to execute to him a deed for the premises.

The district court rendered a decree canceling the contract, from which the defendant appeals.

The parties to the suit were formerly husband and wife. A separation took place, and the wife commenced proceedings in the district court of Furnas county, to obtain a divorce and for alimony. On the 3d day of July, 1885, while the divorce suit was pending, Hunter conveyed to his wife the land in controversy, subject to incumbrances thereon, and he also turned over to her all his personal property, excepting one horse. The defendant contends that the agreement was that the plaintiff was to return to his home and that they were to live together. The plaintiff insists that in consideration of the conveyance of the land and the transfer of the personalty, she agreed to pay certain debts of her husband and liens upon the property, and to support their minor children, who were then living with her, and as a further consideration she executed and delivered to Hunter her four promissory notes for the sum of $100 each. Mrs. Hunter subsequently obtained a divorce and married one John Pryor

It sufficiently appears that Hunter was not satisfied with the settlement. So on the 11th day of January, 1887, the parties entered into a written agreement, by the terms of which she was to receive all the personal property, excepting two old plows. She agreed to reconvey to him the land and he was to surrender to her the notes he held against her, three of which were then outstanding, one having been previously delivered to her. It is this contract that the plaintiff seeks to have set aside.

The agreement to convey was certainly based upon a sufficient consideration. At the time the plaintiff was indebted to her husband in the sum of $300 and interest on her notes. He stipulated in the agreement to surrender to her these notes and she agreed to deed the land to him. That mutual promises are sufficient consideration to make a valid contract is too elementary to require the citation of authorities.

It is urged that the defendant has not fulfilled his part of the contract by delivering up the notes. If this were true, still, under the pleadings and evidence, the plaintiff would not be entitled to a cancellation of the agreement. There is no allegation in the petition, nor is there a syllable of proof, that the plaintiff has offered to perform her part of the contract. On the contrary, it conclusively appears, both in the pleadings and evidence, that the plaintiff has always insisted that she was not bound by the agreement and that she was unwilling to make the deed. The plaintiff, therefore, was not in a position to ask a court of equity to annul the contract on that ground.

There is in the record, however, evidence tending to show that the defendant placed the notes in the hands of A. B. Wolfe, a justice of the peace, to deliver to the plaintiff, that the justice prepared a deed for her to sign, that he so informed her, and she declined to sign the deed. It is true the notes were not exhibited to her, but this was entirely unnecessary, she having refused to recognize the validity of the contract.

The remaining question to be considered is, Was the plaintiff's signature obtained by duress? The testimony shows that the day the agreement was signed the defendant and three of his neighbors, Ritz, Woodrum, and Wolfe, the last named being a justice of the peace, went to see the plaintiff for the purpose of obtaining a settlement. Wolfe and Ritz arrived at her home first. Wolfe informed the plaintiff that Hunter was coming to settle with her, to

which she replied, "I am glad of it." Wolfe advised her
to settle or Hunter would make trouble. John Pryor, the
present husband of the plaintiff, was present and remained
until after all the parties left. When the defendant and
Woodrum arrived, the plaintiff and defendant commenced
talking about the division of the property. During the
negotiations each became angry, and the defendant used
some profane and indecent language. The plaintiff ob-
jected to his proposition of settlement, to which the defend-
ant replied, "If you don't want to settle it that way, you
can settle it in court." It also appears that during the
conversation their son Willie came in and he and his
father had some angry words. Willie threatened to whip
his father and the justice said to him he would have order,
and "if we can't have order I will have to put you under
arrest." Afterwards the agreement was prepared by the
justice and signed by the parties.

The above facts are relied upon to establish the charge
of duress. In our opinion the proof fails to show that the
plaintiff was compelled to sign the contract. There was
no threat of personal violence. The threat of suit, if she
did not accede to his proposition, was not such duress as
entitles her to have the agreement set aside.

By the terms of the contract the plaintiff was to have
possession of the house until April, 1887. The proof
shows that in the latter part of March, of that year, the
defendant commenced putting in crops on the land, when
the plaintiff informed him she desired to farm part of it,
which request was refused. The plaintiff subsequently
voluntarily vacated the premises. The defendant has been
in possession ever since. This suit was not brought until
November, 1887. Under the proof the plaintiff was not
entitled to equitable relief, but the defendant, on the sur-
render of the plaintiff's notes, is entitled to a specific
execution of the contract. The decree of the district court
is reversed. On the defendant depositing with the clerk

of this court within thirty days, for the plaintiff, the notes referred to, the plaintiff is required within thirty days thereafter to execute and deliver to the defendant a conveyance for said land, and in case she fails to do so, the clerk of this court is appointed a special commissioner to execute a deed to the defendant for said land.

JUDGMENT ACCORDINGLY.

THE other judges concur.