Samuel Maxwell et al. v. Carlos C. Burr.

Filed February 19, 1895.    No. 6437.

**Evidence to Vary Terms of Contract of Guaranty.**
Upon the faith thereof, goods were furnished to the party in
whose favor there was executed by the defendant to plaintiffs
this written guaranty: "In consideration that S. A. Maxwell &
Co. furnish to M. Stoughton merchandise to the amount of
$762.32 on credit, I, for value received, hereby guaranty due pay-
ment thereof." In a suit to recover the purchase price of such
goods, less in amount than above named, evidenced by notes of
Stoughton, *held*, that it was not competent to vary the terms of
said written guaranty by evidence that the credit contemplated
thereby had been in advance, by agreement between plaintiffs
and defendant, limited to a certain fixed period of duration.

Error from the district court of Lancaster county.
Tried below before Hall, J.

*Ricketts & Wilson,* for plaintiffs in error.

*Pound & Burr, contra.*

Ryan, C.

In this action brought by the plaintiffs in error in the
district court of Lancaster county there was a judgment in
favor of the defendant, except as to a small sum, in refer-
ence to which no discussion is necessary. The instrument
sued on was in the following language:

"GUARANTY.

"In consideration that S. A. Maxwell & Co., of Chi-
cago, Ills., furnish to M. Stoughton, Lincoln, Neb., mdse.
to the amount of $762.32 on credit, I, for value received,
hereby guaranty due payment thereof.    C. C. Burr."

In the petition it was alleged that plaintiffs, wholly rely-
ing upon said guaranty, sold and delivered to M. Stough-

ton goods and merchandise, as per statement attached to said petition, of the agreed price and value of $762.32, as ordered by said Stoughton. The defendant in his answer admitted that goods and merchandise of the agreed price and value of $762.32 were sold to Stoughton by the plaintiffs in reliance upon the guaranty set out in the petition, and that no part thereof had been paid. This admission, that no part of the purchase price of the goods purchased has been paid, serves to eliminate from consideration the suggestion that by giving his notes Stoughton paid the account in settlement of which said notes were given.

The district court found specially that about October 1, 1890, plaintiffs, through P. W. Meiksell, plaintiffs' agent, sold a bill of goods amounting to $762.32 to M. Stoughton of Lincoln, Nebraska; that the terms of said sale were that the goods should be shipped from time to time, covered by a written order made between said parties until the full order had been supplied; that for the goods shipped prior to March 1, 1891, Stoughton was to settle at the latter date, by payment in cash at a certain rate of discount, or give his note for such amount as should be delivered before March 1, 1891, as of that date due four months thereafter, and for all goods shipped after March 1 aforesaid Stoughton was to pay cash with a discount off, or give his note due four months from the date of shipment; that before plaintiffs would ship any of the goods after the receipt of the above order they wrote to Stoughton that they must have a guaranty or the payment of the bill, whereupon Stoughton procured the guaranty sued on. The court found specially that after Stoughton sent in the guaranty plaintiffs began shipping goods under the aforesaid order, and before March 1, 1891, had shipped goods of the value of $609.40; that after March 1, aforesaid, goods were shipped in installments, aggregating $129.86; that there were executed to plaintiffs by Stoughton on March 2, 1891, four promissory notes for the sum of $152.35 each, or in all, $609.40,—the value of

the goods sold before March 1, aforesaid; that these notes fell due respectively in 1891 as follows: One on June 1, one on June 20, one on July 10, and finally one on August 1; and that the defendant was ignorant of the terms of the contract made October 1, 1890, between plaintiffs through Meiksell, their agent, and Stoughton, and was also without knowledge of the giving by Stoughton of his notes to plaintiffs.

On the above findings of fact the district court based its conclusions of law, that the contract of guaranty of the defendant should be construed and his liability thereunder determined by the terms of the sale made by Meiksell for plaintiffs to Stoughton, and that by taking notes as above described, instead of taking a single note for $609.40, due July 1, 1891, plaintiffs changed the terms of the contract between themselves and Stoughton from what those terms were when the contract of guaranty was made, whereby the guarantor was relieved of his liability as such. It is not deemed necessary to discuss, separately, the transactions arising out of the sales made after March 1, 1891, for the measure of the defendant's liability applicable to the transactions of previous dates, equally governs these. As to the correctness of the abstract principle applied by the district court there seems to be little, if any, difference between counsel for the respective parties. If we understand them correctly, they agree that if the defendant, as a guarantor, became bound for the payment by Stoughton of a certain sum at a fixed time, an extension of the time of payment by the payee on a sufficient consideration, without the consent of the guarantor thereto, operated to release his collateral liability. As has already been remarked, the claim that the notes given operated as a payment is not presented in this record. The only questions are, first, whether or not there was, when the guaranty was executed, an existing contract of sale, and second, did any contract between plaintiffs and Stoughton inflexibly require that a

note or notes taken March 1, 1891, should fall due July 1 thereafter.

It has already been noted that in the petition it was averred that, relying wholly upon the guaranty and the faith and credit of the guarantor, plaintiffs sold and delivered to M. Stoughton the goods for the payment of which this suit was brought, and that in the answer there was an admission that said goods, of the agreed price and value sued for, were sold to Stoughton in reliance upon the guaranty. The evidence of Mr. Stoughton was without bearing on this point, and the usages of trade were not established by such proofs as would entitle them to consideration as having impliedly been within the minds of both contracting parties when the goods were sold, so that there was in reality only the testimony of Mr. Meiksell as to the manner in which the sale of the goods was made and its terms. Referring to the list of merchandise sold, which was thereupon introduced in evidence, Mr. Meiksell said :

"This is a list of goods that I sold him in two orders, Nos. 27 and 29; but you understand I took these in a manifold copy book and delivered to him a copy of the order. * * * On the one order—the copy of the order that he got—the statement was made on there that that was stock goods. The bill was to be four months from March next. * * * All goods were sold in the regular terms of all wall-paper houses, jobbers and manufacturers, four months from the first of March following the order. * *. The understanding was the bill would not be due until next July.

"Q. Now I notice this paragraph in the heading of the bill, 'Terms four months note or 12 per cent per annum discount for unexpired time. Settlement to be made within 30 days from date of invoice (either by note or cash).' Now what do we understand to be the custom under that clause?

" A. Well, it is the custom of all paper houses to require

notes of a man after he receives the goods simply to make a showing that he has got, or has had the goods, because, if we give a man four months' time and required no note he might get up and swear he never got the goods."

It has already been stated that for the introduction of testimony as to custom no sufficient foundation was laid. It is hardly necessary to point out that the above evidence as to the purpose for which notes were taken was incompetent as being in contradiction of the language of the notes themselves. The question and answer quoted are fully set out as a striking illustration of the violation in practice of the rule that parol evidence is inadmissible for the purpose of varying the terms of a written contract. Without doubt, counsel for defendant in error will concede the correctness of this rule and that it is, in this instance, very applicable. Let us now consider the language of the written guaranty, and the parol evidence offered in connection therewith, in the light of the same rule. Its language was as follows: "In consideration that S. A. Maxwell & Co., of Chicago, Ills., furnish to M. Stoughton, Lincoln, Neb., mdse. to the amount of $762.32 on credit, I, for value received, hereby guaranty the payment thereof." In this there is contained no reference to a credit already contracted for, or one of any particular kind or duration. By the above quoted testimony of Mr. Meiksell it was attempted to be shown that when the guaranty was executed an oral contract between plaintiffs and Stoughton was already in existence, by the terms of which inflexibly there had been fixed a credit of four months to be extended to Stoughton dating from March 1, 1891. Why was this evidence admissible if that offered as to the purpose for which Stoughton's notes were given was incompetent? The evidence of Mr. Meiksell tended only to show that an order for goods had been made out by him of which a copy was at that time given to Stoughton. This order was evidently prepared from oral suggestions, perhaps made by Stoughton,

or advanced by Meiksell and assented to by Stoughton. In so far as the plaintiffs are concerned this order was, therefore, but the oral propositions of Stoughton made to plaintiffs' agent and by that agent communicated to his principal. As alleged in the petition, and admitted by the answer, this order was filled on the faith of the guaranty, which, without question, was executed after the order of Stoughton had been given to Meiksell. To demonstrate that evidence of any kind was inadmissible for the purpose of engrafting new conditions upon the written guaranty, as well as with the view of illustrating the applicability of this rule to the facts of this case, and for what purposes alone oral evidence might be receivable, reference is made to *Tootle v. Elgutter*, 14 Neb., 158. The question presented in the case just cited was whether or not a guaranty sued upon had been exhausted by the first credit to the amount therein named, or was one continuing in its nature. While it is not an authority in point as an adjudication, it contains language so appropriate to our above enumerated purposes that, without comment, it is quoted and adopted as part of this opinion.

"The rule is well settled that where a contract has been reduced to writing, without any uncertainty as to the object and extent of the obligation, the presumption is that the entire contract was reduced to writing, and oral testimony as to declarations at the time it was made are not permitted, except in a direct proceeding for that purpose to change the written instrument. In other words, parol contemporaneous evidence is not admissible to change the terms of a valid written contract. (1 Greenleaf, Evidence, sec. 275.) But this restriction applies only to the language of the contract. It may be read by the light of surrounding circumstances—by the construction given to it by the parties themselves, in order more perfectly to understand the intention of the parties. In such cases the court is not to inquire what the parties may have secretly intended, but what is

the meaning of the words they have used. (1 Greenleaf, Evidence, sec. 277.)

"As is said by a late writer, the general rule that unambiguous language in a contract must control, does not exclude extrinsic evidence of the subject-matter and other surrounding circumstances to enable the court to consider what the parties saw and knew in order to ascertain their meaning. (Abbott, Trial Evidence, 508.)

" In *Hargreave v. Smee*, 6 Bing. [Eng.], 244, Chief Justice Tindal said: 'The question is, what is the fair import to be collected from the language used in this guaranty? The words employed are the words of the defendant and there is no reason for putting on a guaranty a construction different from that which the court puts upon any other instrument. With regard to other instruments the rule is, that if the party executing them leave anything ambiguous in his expressions such ambiguity must be taken most strongly against himself.'

"In *Mason v. Pritchard*, 12 East [Eng.], 227, it is said: 'The words were to be taken as strongly against the party giving the guaranty as the sense of them would admit.' "

The language above quoted establishes the propositions that evidence was admissible of the circumstances surrounding the making of the guaranty to enable the court more perfectly to understand the intention of the parties, but not to prove what they secretly intended, nor for the purpose of varying or contradicting the terms of the guaranty itself. The evidence upon which was predicated the finding that when the guaranty was made there existed a contract which required that such notes of Stoughton as should be taken should be for the exact time of four months was insufficient to sustain said finding, and besides was wholly incompetent. The conclusion deduced, that the taking of the notes for periods other than that above indicated relieved the defendant of liability, was, therefore, without warrant. As the discharge of the guarantor wholly de-

pended upon the finding of fact and conclusion of law just referred to, the judgment in the defendant's favor is reversed and this cause is remanded for further proceedings not inconsistent with the views herein expressed.

REVERSED AND REMANDED.