COMMERCIAL STATE BANK OF NELIGH V. ANTELOPE COUNTY.

FILED MAY 19, 1896.   No. 8409.

1. **Parol Evidence: WRITTEN AGREEMENT: CONTRADICTION: ESTOPPEL.** Parol evidence of prior or contemporaneous conditions modifying a written proposition afterwards submitted and acted upon cannot be received in evidence to vary the terms of the writing.

2. **Counties: RELEASE OF DEPOSITORIES: CONTRACTS.** A county has sufficient authority to raise money otherwise, and an agreement of its treasurer that if money is advanced by a bank for certain county purposes, such bank shall be relieved to a certain extent from liability to the county as a depository is not enforceable.

ERROR from the district court of Antelope county. Tried below before ROBINSON, J.

*James H. Macomber* and *N. D. Jackson*, for plaintiff in error.

*Herman Freese* and *M. F. Harrington*, *contra*.

RYAN, C.

By error proceedings, plaintiff in error seeks to reverse a judgment rendered against it, in the sum of $3,641.14, by the district court of Antelope county. There were admitted by the answer in said court the averments of the petition of the county of Antelope that the Commercial State Bank of Neligh, the defendant, from December 1, 1891, till September 26, 1894, was an incorporated bank, doing business as such in Antelope county; that from the 7th day of January, 1892, to the 4th day of January, 1894, J. D. Hatfield was the duly elected, qualified, and acting treasurer of Antelope county, and that on or about January 10, 1892, the Commercial State Bank of Neligh applied in writing for the privilege of keeping the funds belonging to said county and controlled by said county treasurer. The application, which it was denied by the answer was accepted, was in the following language:

"NELIGH, NEB., January 1, 1892.

"*To Hon. J. D. Hatfield, County Treasurer, Antelope County:* The Commercial State Bank of Neligh, Nebraska, hereby agrees to comply with all the rules and regulations governing county depositories provided by the laws of the state of Nebraska, as set forth in the Session Laws of 1891, and to pay to Antelope county, Nebraska, interest at the rate of five per cent per annum, interest payable monthly, on all county funds deposited with said Commercial State Bank by the county treasurer; provided the Commercial State Bank is made the depository of all funds controlled by the county treasurer by virtue of his official position. The Commercial State Bank further agrees to pay all Antelope county warrants at par

36

upon presentation during the time that the said funds are kept on deposit with the said bank.

"W. T. WATTLES,
"*President.*

"K. T. RICHARDS,
"*Cashier.*"

In the answer there was also a denial of the averment in the petition that there was filed with the county clerk of Antelope county a bond in the following language:

"Know all men by these presents, that we, the Commercial State Bank of Neligh, Nebraska, as principal, and G. W. Wattles, of Carroll, Iowa, Sumner Wallace, of Rochester, New Hampshire, and W. T. Wattles, K. T. Richards, W. G. Galloway, C. Fisher, W. E. Relf, H. H. Jurgling, Wm. Campbell, Carl Roben, H. M. Cox, and J. H. Mills, of Neligh, Nebraska, as sureties, are held and firmly bound unto J. D. Hatfield, county treasurer of Antelope county, Nebraska, and unto Antelope county, Nebraska, in the sum of one hundred and fifty thousand dollars ($150,000), lawful money, to be well and truly paid to the said J. D. Hatfield, treasurer of Antelope county, Nebraska, or his successor in office. For the faithful performance of such obligation, we bind ourselves, our heirs, administrators, and assigns forever.

"The condition of the above obligation is such that whereas, the said the Commercial State Bank of Neligh, Nebraska, has been designated as a depository of the funds of Antelope county, Nebraska, which shall come into the possession of said J. D. Hatfield as treasurer of said county: Now, therefore, if the said Commercial State Bank shall well and truly pay to the said J. D. Hatfield, treasurer of Antelope county, Nebraska, or his or their order, all sums of money they receive on deposit from treasurer aforesaid, then this obligation to be null and void, otherwise to be in full force and effect."

To this bond was affixed the names of the sureties therein described. There were in the answer denials of the averments of the petition that said bond was ap-

proved by the county board of supervisors of said Ante-
lope county; that thereupon the several current funds
of said county were by J. D. Hatfield, its treasurer, de-
posited with said Commercial State Bank, amounting to
the sum of $37,746.78; that said county treasurer, be-
tween January 7, 1892, and January 4, 1894, collected
the sum of $165,182.77 belonging to the several current
funds of said county, all of which was by said county
treasurer deposited in said bank; that said bank failed
and refused to render, at the end of each and every
month, to said treasurer a statement in duplicate show-
ing the several daily balances and the amount of money
of the county of Antelope held by it during the month
as county depository, and the amount of accretions
thereof; that the average daily balances belonging to
the several current funds so on deposit between January
7, 1892, and January 4, 1894, was $60,000; that thereon
the said bank had failed and refused to pay the interest,
amounting to the sum of $6,000, which latter sum, ex-
cept $275.03, had never been paid.

It is not deemed essential to consider whether or not
the bond above given was in strict compliance with the
provisions of section 8, chapter 50, Laws, 1891, for a
demurrer of all the parties who signed it was sustained,
and thenceforward the action proceeded alone against
the bank under the statute upon its written proposition.
The bond, therefore, serves no purpose in this action,
except in so far as its presentation to, and approval by,
the proper county authority qualified the bank to be a
depository. We find in the records of the board of super-
visors of Antelope county a report of a committee of the
board reciting that the county treasurer had selected
the above named bank as a county depository, and had
accepted the bid of the bank. In this report there was
a recommendation that the bond of the bank be ap-
proved. There is in the bill of exceptions no transcript
of the record of the board of county supervisors showing
that this report was acted upon. The county treasurer,

however, made deposits in the bank which tendered the bond, and such bank received such deposits and paid interest to certain limited amounts, as though the bond had been regularly accepted. Under these circumstances the bank should not be permitted to assert that it was released from the obligations which arose out of its written proposition, in view of the oral evidence and reports of the bank, which show conclusively that all parties concerned acted upon the assumption that the bank was in fact a regularly constituted and approved depository of county funds.

The bank, however, insists that there was error in the refusal of the court to permit the filing of a certain amended answer tendered after the trial was concluded. In addition to the issues presented by the original answer, which have been fully described, this amended answer denied that a bond had been filed, and of new matter contained the following averments: "At the time of making the application set out in the petition, it was assumed and believed by J. D. Hatfield, then county treasurer of said plaintiff, and by defendant, that the said county treasurer had the right and authority to designate the depository for the funds of the county, subject to legal deposit under the law and to draw interest, to-wit, the soldiers' fund, the county general fund, the county bridge fund, the county poor fund, and a court house fund; that none of the other funds of the county could be loaned or deposited under the law; that acting under such understanding and agreement the defendant could only obtain the said funds for deposit, and could only apply for those said funds, the defendant made the application to said county treasurer set out in paragraph three of said petition; that in making said application on the part of said defendant, and in accepting said application on the part of said treasurer, it was mutually understood and agreed that said application was made to include only said named funds; that, acting on said understanding and agreement, the said county treasurer

deposited under said agreement, and the defendant accepted under such understanding and agreement, the money belonging to said funds, and no others; the defendant kept account of said funds, and allowed accretions of interest thereon as understood and agreed under said applications, and made monthly reports thereof to said treasurer showing the condition and amount of said several funds on deposit, and allowed and paid all of said funds and interest thereon; that said reports continued the whole time that said defendant had said funds on deposit, and allowed and paid all such funds and interest to the said county treasurer strictly according to the mutual agreement and understanding of the intention and meaning of the application made; that for the full space of about two years from January 7, 1892, to January, 1894, defendant made and filed said reports with said treasurer under said application; that in pursuance of said application so made and so understood, the defendant executed the bond set out in the petition. * * * The defendant further alleges that at the time said application was made to become the depository of said funds of the plaintiff there was not money enough on hand in the treasury of said county to pay the warrants that were necessarily issued by the said county, and as a part of the agreement the defendant was to protect the warrants of the county so as to keep them at par in value, and in pursuance of such agreement and understanding the defendant did pay all Antelope county warrants at par, upon presentation, during the time that said funds were so kept on deposit with it in its bank."

The above quotation discloses that the bank's claim was that the written agreement should be controlled by a prior or contemporaneous oral agreement limiting the liability to pay interest upon certain funds. The parol evidence tendered to show this fact was, upon objection, excluded by the court. This amendment was offered after the evidence had been introduced, and was not to conform the pleadings or proceedings to the fact proved.

It was tendered on the theory on which the defense was attempted to be made, and consequently embodied the same proposition as was contained in the instructions which the bank asked, and which the court refused to give. The amendment has, therefore, been quoted at length herein, that the question apparently relied upon by the bank might be considered as a legal proposition, once for all. It cannot have escaped notice that the bank nowhere pretended to describe what funds were intrusted to it upon which, as it claimed, it was not liable for interest. The written proposition was to pay interest "on all county funds deposited with said Commercial State Bank of Neligh, Nebraska, by the county treasurer; provided said Commercial State Bank is made a depository of all funds controlled by the county treasurer by virtue of his official position." It need not be determined whether or not this proviso could be enforced by a depository, for the proofs in this case show that all county funds were deposited in accordance therewith. The sole proposition with which we are now concerned is whether or not the bank should be held to the terms of its written offer. The bank, as has been said, did not describe what other funds than those enumerated in its proffered amended answer had been deposited by the treasurer during his term of office. Mr. Hatfield testified that his deputies, as he understood it, deposited all the money in bulk, and at the end of the month they would figure up how much there was of the different funds and strike an average of it to make the daily balance. H. J. Spencer, one of the deputies referred to by Mr. Hatfield, testified that all the funds were deposited at the Commercial State Bank as they were collected. W. T. Wattles, the president of the bank, when called as a witness for the county, testified as follows:

Q. Have you brought with you, in obedience to subpoena, the books of the bank showing deposits of J. D. Hatfield, treasurer of Antelope county?

A. I have not.

Q. Where are they?

A. They are not in my possession.

Q. Where did you see them last?

A. At the depot.

Q. What depot?

A. Neligh.

Q. When?

A. Last winter some time.

Q. What time in the winter?

A. Shortly after the consolidation of the two banks.

Q. Before or after the service of the subpœna?

A. I don't remember the date.

Q. You remember you were served with a subpœna to bring these books?

A. Yes, sir.

Q. Did you have the books in your possession at that time?

A. I don't know.

Q. Don't you know whether you had the books at the time you were served with a subpœna to produce the books?

A. I don't know.

Q. What became of them?

A. They were shipped to the stockholders.

Q. Your brother?

A. To the Rochester Loan & Banking Company, of which he is agent.

Q. At Omaha?

A. Yes, sir.

Q. You are not prepared to say whether that was before or after you were served with the subpœna?

A. Not without looking up the date of the shipment and date of the subpœna.

Q. You can find that by morning?

A. I think so.

No further mention of these books was made during the trial, and, as they were not produced, the bank deprived the court and jury of what might have assisted

in arriving at the condition of the different funds in the bank during Mr. Hatfield's term as treasurer. The cash books of the county official just named were offered in evidence, as were also the report of the finance committee of the board of supervisors and several reports of the aforesaid county treasurer. Whether or not independent evidence of this character was competent for the purpose of showing the amounts deposited by the county treasurer we are not called upon to determine, for that proposition is not presented by the petition in error. Neither is there thereby raised a question as to the verdict and judgment being excessive, so that we are justified in assuming, without going through the voluminous bill of exceptions to make an exact computation, that this amount was not in excess of what was justified by the proofs. This desultory consideration of collateral questions has been necessary to relieve the main proposition of foreign matter, and thus laid bare, this question is a very simple one, and that is, whether or not a written proposition, accepted and acted upon, can be varied by evidence of a prior or contemporaneous oral contract between the parties thereto, in respect to the same subject-matter, and this question, without the necessity of invoking authority, must be answered in the negative. From this it should not be inferred that we admit the right of a county treasurer by a written agreement to relieve a depository of a liability imposed by law, for it is not necessary to our present purpose to consider that question. In the proposed amended answer were recitations that the bank maintained the warrants of the county at par, and that, therefore, it should be relieved of liability beyond paying interest on the funds in said proposed amended answer described. It has been provided by statute how the necessary expenses of counties are to be provided for, and how, if a loan is necessary, such loan shall be obtained. Any provision of a contract with respect to a deposit by which it is attempted to supersede the provisions of the statute in respect to raising

money for county expenses should be viewed with but little favor, and certainly can furnish no sufficient consideration for a release from liability as a depository.

We cannot summarize our views of this case more satisfactorily than by merely quoting the first instruction given by the court, in the following language: "You are instructed in this case to find for the plaintiff, and you are to assess the amount of plaintiff's recovery at what would be the interest on the county funds of Antelope county deposited with the defendant, the Commercial State Bank, by J. D. Hatfield, while county treasurer of Antelope county, Nebraska, at the rate of five per cent per annum, interest payable annually, less the amount of $273, which is admitted to have been received by said county from said bank, from the first day of January, 1892, till the first day of January, 1894, together with seven per cent interest thereon from said first day of January, 1894." The judgment of the district court is

AFFIRMED.