THEODORE H. TE POEL, APPELLEE, V. ELIAS B. SHUTT ET AL., APPELLANTS.

FILED FEBRUARY 9, 1899.    No. 8680.

1. **Contracts:** CONSTRUCTION. While a court may construe and enforce contracts duly entered into, it is not the province of the judiciary to make contracts for parties.

2. **Tender.** A tender, to be effectual, must be without conditions and made to the party entitled to receive the same.

3. ———: CHECKS. Ordinarily, a bank check is not a sufficient tender of money.

4. **Parol Evidence:** CONTRACTS. A written contract cannot be varied, modified, or contradicted by parol evidence of a prior or contemporaneous agreement between the parties.

5. **Appeal:** PRACTICE. Rulings on the admission or exclusion of testimony cannot be reviewed where the cause is brought to this court on appeal.

6. **Contracts:** RESCISSION. One is not entitled to a rescission of a contract who is unwilling to perform his part of the agreement.

7. ———: TIME OF PERFORMANCE. The contract for the exchange of lands set out in the opinion construed, and *held* that the forty days designated therein for the exchange of deeds did not commence to run from the time the contract was made, but from the effecting of a loan of a certain sum of money stipulated to be made by one of the parties in consummation of the trade.

8. **Specific Performance.** Under the evidence plaintiff was entitled to a specific execution of the contract for the exchange of lands.

APPEAL from the district court for Burt county. Heard below before KEYSOR, J. *Modified.*

*W. G. Sears* and *W. S. Summers*, for appellants:

The time limit expired on May 5 and the contract was unenforceable thereafter. (*Paget v. Park*, 52 N. W. Rep. [Minn.] 532; *Roberts v. Wilcox*, 8 W. & S. [Pa.] 470; *Shinn v. Roberts*, 43 Am. Dec. [N. J.] 636; *Wells v. Smith*, 31 Am. Dec. [N. Y.] 274; *Curtis v. Blair*, 59 Am. Dec. [Miss.] 257; *Brown v. Ulrich*, 48 Neb. 409; *Spaulding v. Fierle*, 33 N. Y. Supp. 402.)

Appellee abandoned his claims by mortgaging the land. The court erred in rejecting the evidence as to the agreement concerning the abstract. (*Beyerstedt v. Winona Mill Co.*, 51 N. W. Rep. [Minn.] 619; *Paul v. Owings*, 32 Md. 402; *Sire v. Rumbold*, 39 N. Y. 85; *Hultz v. Wright*, 16 Am. Dec. [Pa.] 575; *Raub v. Barbour*, 6 Mackey [D. C.] 245; *Bretto v. Levine*, 52 N. W. Rep. [Minn.] 525.)

Te Poel's farm is incumbered and Shutt has sold his land to Hebebrand, who is a *bona fide* purchaser. The time for performance has passed and specific performance should not now be required. (*Welty v. Jacobs*, 64 Ill. App. 285.)

The decree should require Mrs. Te Poel to join in the conveyance.

*Charles Sumner Lobingier*, for appellee:

The rights of the parties became vested and the equitable title passed when the contract was signed (*Brewer v. Herbert*, 30 Md. 301; Pomeroy, Specific Performance sec. 314; 1 Pomeroy, Equity Jurisprudence [1st ed.] sec. 368); and Shutt could not extinguish these rights by merely withdrawing the papers which he had deposited. Shutt failed to perform the duties imposed upon him: (1.) By not incumbering his farm for $5,000. (2.) By failing to pay Te Poel's creditors the amount of their liens. (3.) By not even making a sufficient tender, which must be (*a*) to the proper party (*Fletcher v. Dougherty*, 13 Neb. 224); (*b*) absolute and without qualifications (*Tompkins v. Batie*, 11 Neb. 147; *Williams v. Eikenberry*, 22 Neb. 215); and (*c*) of actual money, unless waived (*Guthman v. Kearn*, 8 Neb. 502; *Walter Bros. v. Reed*, 34 Neb. 544). (4.) By failing to furnish a proper abstract. (5.) By failing to deliver or tender to Te Poel a warranty deed.

On the other hand, Te Poel did all and more than was required of him. Shutt could not rescind so long as he was in default, nor could he complain of Te Poel's nonperformance of duties like the procuring of releases, which Shutt himself had prevented by refusing to pay

42

the creditors. (*Minneapolis & S. L. R. Co. v. Cox*, 76 Ia. 816; *Pryor v. Hunter*, 31 Neb. 678; *Laird v. Smith*, 44 N. Y. 618; *Post v. Garrow*, 18 Neb. 682; *Mix v. Beach*, 46 N. Y. 311; *Crabtree v. Levings*, 53 Ill. 526; *Potter v. Tuttle*, 22 Conn. 512; *Hubbell v. Von Schoening*, 49 N. Y. 326; *Kellogg v. Lavender*, 9 Neb. 425; *Voltz v. Grummett*, 49 Mich. 453; *Bass v. Gilliland*, 5 Ala. 761; *Clark v. Sears*, 3 Ia. 104.)

The forty days for exchanging deeds were to run from the time Shutt should obtain the loan by incumbering his land for $5,000. This must be true, because (1) the context requires it; (2) the clause was plainly inserted in order to allow time for further details after the loan was obtained; (3) appellant's contention would make the period expire and the date of exchange fall on Sunday, which is not a business day. But even if the forty days were to be construed as running from the date of the contract, failure to exchange within that time would not have been fatal, for time was not of the essence. (*Langan v. Thummel*, 24 Neb. 265; *Willard v. Foster*, 24 Neb. 205; *Kellogg v. Lavender*, 9 Neb. 418; *Merriam v. Goodlett*, 36 Neb. 384; *King v. Gsantner*, 23 Neb. 795; *Taylor v. Longworth*, 14 Pet. [U. S.] 171.) Nor is this rule confined to cases where possession has been taken and money paid. *Hubbell v. Von Schoening*, 49 N. Y. 326; *Quinn v. Roath*, 37 Conn. 16; *Gibbs v. Champion*, 3 O. 335; *Voltz v. Grummett*, 49 Mich. 453.)

The undelivered and unrecorded mortgage was no bar to specific performance. (*Milliken v. Ham*, 36 Ind. 166; *Filchner v. Fidelity Mutual Fire Ass'n*, 72 N. W. Rep. [Ia.] 530.) Even an actual mortgage would not have been so. (*Tiernan v. Roland*, 15 Pa. St. 429; *Dahill v. Booker*, 140 Mass. 308.) Nor would any other incumbrance. (*Megibben v. Perin*, 49 Fed. Rep. 183; *Oakey v. Cook*, 41 N. J. Eq. 350; *Keating v. Gunther*, 10 N. Y. Supp. 734; *Mastin v. Grimes*, 88 Mo. 478; *Ley v. Huber*, 3 Watts [Pa.] 367.)

There was no error in rejecting the offer to show a "general understanding" that the "fact" of a loan by a regular loan company should be substituted for the re-

quired abstract. (*Kaserman v. Fries*, 33 Neb. 427; *Dodge v. Kiene*, 28 Neb. 216.) Even had this been error, it could not be reviewed on appeal. (*Ainsworth v. Taylor*, 53 Neb. 484; *Walker v. Smith*, 54 Neb. 31.)

The unrecorded and undelivered deed to Hebebrand is no bar to specific performance. (*Snowman v. Harford*, 57 Me. 397; *Welfley v. Shenandoah Iron, Lumber, Mining & Mfg. Co.*, 3 S. E. Rep. [Va.] 376.)

Mrs. Te Poel died before the decree was rendered, and, moreover, was not a party to the suit and could not be required to convey. Appellants have cited no case in point.

For centuries the English law has taught the lesson: Keep your contracts. To enforce this lesson it has devised the very remedy of specific performance here sought,—a remedy peculiar to our jurisprudence and beneficent in social effects. (*Lumley v. Wagner*, 1 D. M. & G. [Eng.] 619; *French v. Macale*, 2 Dru. & War. [Ir.] 272.) Appellee has observed this lesson and appellants should be compelled to observe it by the affirmance of a decree both technically right and morally just.

NORVAL, J.

On March 26, 1895, Theodore H. Te Poel and Elias B. Shutt entered into a written contract for the exchange of farms. Both parties and their wives signed the agreement, a copy of which follows:

"TEKAMAH, NEB., March 26, 1895.

"This memorandum witnesseth, that Theodore H. Te Poel has this day traded to Elias B. Shutt his Burt county, Nebraska, farm of 400 acres, being the southwest quarter northwest quarter and east half northwest quarter and west half northeast quarter and southeast quarter, all in section No. 33, and the southwest quarter southwest quarter of section No. 34, all in township 22 north, of range 11 east of the 6th P. M., at the agreed price of $12,000, for the Saunders county, Nebraska, farm

of 330.92 acres of said Elias B. Shutt at the agreed price of $14,891.40. Theodore H. Te Poel agrees to procure release of all incumbrances against his farm and place the same of record and furnish abstract of title to his farm showing perfect title in him, and to execute to said Elias B. Shutt a general warranty deed for the same. The said Elias B. Shutt agrees to incumber his Saunders county farm for $5,000 for five years, at six per cent annual or semi-annual interest, or for such greater amount as he may be able to procure thereon at said rate of interest, and to execute to said Theodore H. Te Poel a general warranty deed, subject to such mortgage as he may put thereon in accordance with the foregoing agreement, which mortgage and interest said Te Poel, by the terms of such deed, shall assume and agree to pay. . Said Shutt shall also furnish an abstract of title to the Saunders county land from date of said loan to the time of exchange of deeds, showing perfect title in him except said mortgage. For his trouble and expense in the matter of getting loan Te Poel agrees to pay Shutt $70 extra above agreed price, and Shutt agrees to get loan as soon as possible, and when funds are so borrowed the deeds above provided for shall be exchanged and delivered, or within forty days at the most. Said Te Poel shall agree with his creditors who have liens upon his lands as to amount due them, and said Shutt shall pay the creditors the several amounts agreed upon by said Te Poel with them to the extent of the proceeds of the loan, if so much is required to pay the incumbrances on Te Poel's farm. The balance of purchase price ($2,891.40) said Te Poel agrees to pay in cash to said Shutt when deeds are exchanged as above provided for, less any amount of funds that may remain in-hands of said Shutt out of proceeds of loan after making payments to creditors of Te Poel as above provided. The land to be deeded by said Shutt is the east half northeast quarter and east half southeast quarter section 1, township 16, range 7 east, and lots No. 1 and No. 2, section 6, and northwest quarter section 5, and fractional

northeast quarter section 7, all in township 16 north, range 8 east, Saunders county, Nebraska, being 330.92 acres. Each party shall assign insurance policies in force on buildings on premises, and any difference in value shall be paid in cash on basis of pro rate. It is agreed that possession shall not be given by either party until March 1, 1896. Te Poel is to have use of rents of Burt county farm and Shutt is to have use of rents of Saunders county farm. J. R. Force shall pass on abstract to be furnished by Te Poel.              THEODORE TE POEL.
                                          "DORA TE POEL.
                                          "ELIAS B. SHUTT.
                                          "JANIZA A. SHUTT.

"In presence of
     "JAMES R. FORCE."

This suit was instituted by Theodore H. Te Poel to enforce the specific performance of the contract set out above, and from a decree in his favor the defendants Shutts appeal.

They contended in the trial court, and so insist here, that time was made the essence of the contract, which required the conditions and stipulations of the parties to be fully performed within forty days from the date of the agreement; that the plaintiff wholly neglected, failed, and refused to comply with the terms of the contract on his part to be performed within the stipulated time; and that defendants either did all things required of them by and under the provisions of the contract, or were ready, willing, and able to comply with every condition imposed upon them within the specified period. If these contentions of the defendants are well founded, it is perfectly plain that the decree is wrong, and must be set aside. It will be observed that the contract required of each party the performance of several things, and in more than one particular the act stipulated to be done by one hinged upon the performance by the other party of another distinct condition. Thus, Elias B. Shutt, among other duties, was required to procure a loan as soon as possible

on the farm he was to convey to Te Poel for a sum not less than $5,000, furnish an abstract from the date of said loan to the time of exchanging deeds showing perfect title in Shutt to the land, except said mortgage, pay Te Poel's creditors the amounts agreed by the latter to be due them on their liens against his lands, assign insurance policies and execute to Te Poel a warranty deed, subject to such mortgage, with the grantee's assumption thereof. On the other hand, Te Poel obligated himself, *inter alia*, to agree with his creditors as to the amount of their liens, obtain release of such liens and have the same recorded, furnish an abstract of title to, and execute a warranty deed for, the lands owned by him and to be exchanged, assign his insurance policies, and pay the balance of the consideration, including a premium or bonus of $70 to Shutt for procuring the loan. An examination of the contract in question plainly reveals that the first step to be taken in carrying out its terms was the obtaining of the loan by Shutt on the lands to be deeded by him for a sum not less than $5,000. Until this duty was performed nothing was required of Te Poel. He was to agree with his creditors as to the amount due on their liens against his farm, and the contract next obligated Shutt to pay such creditors, and Te Poel was to obtain and record releases of said liens or incumbrances.

The record shows that Shutt never obtained a loan on his farm according to the terms of the contract, but did effect a loan about April 26, 1895, for $4,500 only, which sum was $500 less than the amount required, and left with J. R. Force a blank note and mortgage for Te Poel to execute to Shutt for $500. It is claimed that the latter could not borrow but $4,500 on the land, and the taking of a mortgage to himself for the remaining $500 was a substantial compliance with the terms and conditions of the contract in question. In this view we are not able to concur. The question is not whether the giving of two mortgages aggregating $5,000 was as favorable to Te Poel as though Shutt had procured a loan of $5,000 and

secured the payment thereof by a single mortgage. Our inquiry is confined alone to the stipulations of the parties, and whether the arrangement proposed by Shutt relating to the mortgages was a compliance with the terms of the agreement. Te Poel never obligated himself to give Shutt a mortgage for any sum. This court is powerless to make a new contract, but its province is to construe and enforce the agreement made by the parties themselves. We are constrained to hold that Shutt failed to perform one of the first conditions of the contract on his part to be observed in not obtaining a loan on his farm for $5,000. It is also shown that Shutt never paid the creditors of Te Poel the amounts of their liens as he obligated himself to do. Shutt left with J. R. Foree his conditional check for $5,000, drawn on a bank with a capital of less than half that sum, and in which the drawer had no funds to pay the check. But this was not a compliance with the contract in any particular. Shutt was to pay Te Poel's creditors himself. Moreover, the check was never tendered to plaintiff, but was left with Foree, who drew the contract for the exchange of lands. He was not the agent of Te Poel, nor did he have any power or authority to bind plaintiff in any way in the transaction. A tender, to be effectual or available, must be absolute and unconditional, and made to the party entitled to receive the same. (*Fletcher v. Dougherty*, 13 Neb. 224; *Tompkins v. Batie*, 11 Neb. 147; *Williams v. Eikenberry*, 22 Neb. 215.) Shutt did not produce the money or leave it with Foree for Te Poel. The check was ineffectual as a tender of money. (*Guthman v. Kearn*, 8 Neb. 502; *Walter v. Reed*, 34 Neb. 544.) It would have been different had Te Poel dispensed with the actual production of the cash. But this he did not do, for the obvious reason he was given no opportunity to object. The alleged tender was insufficient because it was not kept good.

Shutt never furnished an abstract of title to his lands to Te Poel as he offered to do. He procured on May 1, 1895, and introduced in evidence on the trial, a certificate

from the register of deeds of Saunders county that no instruments had been filed against the lands owned by Shutt since April 26, 1895, the date of the filing of the mortgage for $4,500. This was insufficient to show that no judgment liens had been obtained against the premises, and therefore did not meet the requirements of the contract to furnish an abstract of title.

The defendants attempted to show on the trial by parol evidence that at the time the contract was entered into it was the general understanding of the parties that in case the loan was obtained, for which provision was made in the contract, such fact should relieve the necessity of furnishing an abstract. The offered testimony on that branch of the case was excluded, and the ruling is now assailed. The testimony was clearly inadmissible and was properly ruled out, since parol evidence of a prior or contemporaneous agreement is inadmissible to vary the terms of a written contract. (*Mills v. Miller*, 4 Neb. 443; *Hamilton v. Thrall*, 7 Neb. 210; *Dodge v. Kiene*, 28 Neb. 216; *Kaserman v. Fries*, 33 Neb. 427; *Mattison v. Chicago, R. I. & P. R. Co.*, 42 Neb. 545; *Maxwell v. Burr*, 44 Neb. 31; *Waddle v. Owen*, 43 Neb. 489; *Commercial State Bank v. Antelope County*, 48 Neb. 496.)

In the next place, the rulings of the trial court on the admission or exclusion of evidence are not reviewable in a case brought to this court on appeal. (*Ainsworth v. Taylor*, 53 Neb. 484; *Walker v. Smith*, 54 Neb. 31.)

Shutt executed a warranty deed for his lands to Te Poel, and within forty days from the time the contract was made placed the same, with the check and certificate of the register of deeds already mentioned, in the hands of J. R. Foree; but the conveyance was never delivered or tendered to Te Poel, nor did Foree have any authority to receive the deed for plaintiff. He was merely to pass upon plaintiff's abstract, and in so doing was the agent only of Mr. Shutt. A tender to any one other than Foree would have been just as effectual as a tender. Immediately on the expiration of the forty days from the execu-

tion of the contract Shutt procured the deed, check, and other papers which he had left with Foree, and claims to have rescinded the contract and refused thereafter to carry out its provisions. The reason Shutt declined to fulfill his contract is, doubtless, because an opportunity was presented to dispose of his lands on more favorable terms to another party for cash. Shutt himself being in default was not entitled to a rescission of the contract. (*Post v. Garrow*, 18 Neb. 682; *Pryor v. Hunter*, 31 Neb. 678.)

The evidence adduced by the plaintiff on the trial tends to establish that he complied with all the duties imposed upon him by the terms of the contract, at least so far as the acts of Shutt, or his refusal to perform his obligations, would permit Te Poel to do. The respective stipulations of the parties were in some respects at least mutual and dependent, and were to be performed simultaneously, so that Shutt could not rescind the contract until he had tendered performance of the stipulations imposed upon him, nor could he take advantage of any default of the plaintiff occasioned by his laches. (*Crabtree v. Levings*, 53 Ill. 526.) The record shows that on May 8, 1895, Te Poel sent his son to Shutt's home to inform him he was ready to exchange deeds, and three days later Te Poel, with witnesses, went to Shutt and requested that he carry out the terms of their contract, which the latter peremptorily declined to do. Plaintiff tendered Shutt a warranty deed for the lands and insurance policies, with the balance of consideration, also amount of money required to pay off all liens against the property, informed him of the sum due his creditors, and caused an abstract of title to be made and submitted to J. R. Foree. Shutt threw the paper on the ground and declined to accept or consider the tender. Under the evidence the court was justified in finding the plaintiff had so far performed the contract on his side as to entitle him to a specific execution of the agreement by the defendants.

Counsel for Shutt argue in their brief that the time

limited by the contract for the exchange of deeds expired on May 5, 1895, and that plaintiff's tender is ineffectual, having been made subsequent to that date. This contention is not well founded. It will be observed that the contract does not fix May 5 as the limit for exchanging deeds. The only stipulation on the subject is that "Shutt agrees to get loan as soon as possible, and when funds are borrowed the deeds above provided for shall be exchanged and delivered, or within forty days at the most." If the forty days are to be computed from the date of the contract, then the time limit expired on May 5. A consideration of the entire contract, and of the various duties imposed upon each party, in connection with the language employed, makes it reasonably certain that the time limit was not to date from the execution of the contract, but rather from the period the funds were borrowed by Shutt. It might have consumed the entire first forty days from the execution of the contract, or more, to complete the loan, in which event no time would have remained for paying Te Poel's creditors, the obtaining of a discharge of the several liens, the paying the balance of the purchase price, the procuring abstracts of title and the exchanging of deeds. The clause quoted makes no reference to the date of the contract, but does specify the borrowing of funds, and it is very evident that it was the intention of the parties that it was from the occurrence of this event that the period fixed for the exchange of deeds should be counted. As Shutt did not borrow the amount of money called for by the contract, the time limit for the exchange of title papers had not expired when plaintiff's tender was made. Aside from the question whether time was of the essence of this contract, the court is convinced that plaintiff was not in default, but complied substantially with his part of the agreement.

It is urged that relief should be refused plaintiff because he mortgaged his farm on August 14, 1895. It is true he executed a mortgage to his brother on that date,

Te Poel v. Shutt.

yet it was never delivered to the mortgagee or placed upon record, so that the mere execution of the mortgage was not an incumbrance of the lands, nor did not preclude Te Poel from complying with his contract with Shutt. (*Tiernan v. Roland*, 15 Pa. St. 429; and cases* cited in brief of plaintiff.)

Another argument advanced by appellants is that Shutt is not the present owner of the title to the lands which he was to exchange. The record shows that the Shutts executed a deed purporting to convey the legal title to the property to John Hebebrand, the person to whom, after the alleged rescission of the contract in suit, Shutt agreed to convey lands. This deed was never delivered to the grantee, nor was he aware of its existence until a short time before the cause was called for trial in the district court. Moreover, Hebebrand was not a *bona fide* purchaser, since he had knowledge of the existence of the rights of the plaintiff. Besides, Hebebrand was made a party to this suit, and he has not appealed from the decree. The making of the deed by Shutt is no defense to the present suit. (*Snowman v. Harford*, 57 Me. 397; *Welfley v. Shenandoah Iron, Lumber, Mining & Mfg. Co.*, 3 S. E. Rep. [Va.] 378.)

The decree is faulty in one particular. It requires Te Poel alone to convey his lands to Shutt. It should have required Mrs. Te Poel to have joined in the conveyance. Shutt was entitled to receive a warranty deed executed by plaintiff and his wife before he could be required to convey to Te Poel. It is suggested in the brief of counsel that Mrs. Te Poel died before the decree was rendered; but the record fails to verify this statement. The decree, in the respect just indicated, will be modified, and in all other particulars it is affirmed.

DECREE MODIFIED.

*See *ante*, p. 593.