DENNIS W. KILLEEN, APPELLEE, V. JOHN DORAN, APPELLANT.

FILED JULY 16, 1929. No. 26740.

Thomas & Vail, for appellant.

Corcoran & Sprague, W. L. Kirkpatrick, C. M. Skiles and W. W. Wycoff, contra.

Heard before Goss, C. J., Rose, Dean, Thompson, Eberly and Day, JJ., and Stewart, District Judge.

Rose, J.

This is a suit in equity to rescind a contract to purchase the controlling interest in the Farmers State Bank of York. The capital stock consisted of 500 shares of the par value of $100 each. Dennis W. Killeen agreed to buy from John Doran 251 shares for $12,000 payable in three instalments. They reduced their contract to writing and signed it. It was dated October 2, 1926, and required Killeen to pay Doran $2,000 by means of a certificate of deposit, $2,000 November 15, 1926, and $8,000 January 15, 1927, subject to stipulated conditions and requirements. The contract refers to Doran, the seller, as first party, and to Killeen, the buyer, as the second party, and contains the following provisions:

"Fourth. When this agreement has been duly executed by both parties, in duplication, a copy thereof or an original thereof shall be deposited in escrow with the said Farmers State Bank. The conditions of the escrow to be supervised and carried out by the president of said bank.

"Fifth. When the first payment of $2,000 in a certificate of deposit is delivered to the escrow agent, the same is to be delivered to first party, when the following conditions have been fully complied with: (a) Thirty (30) shares of said capital stock, a part of the sale herein made, shall be duly assigned and delivered to second party, transferred to second party on the stock records of said bank, and new certificates issued therefor to second party, and first party shall file with said bank his resignation from the board of directors and from any other office he may hold in said bank. (b) Second party is to be elected to the board of directors of said bank and by said board of directors elected to the office of vice president of said bank and be admitted to that office and to the usual duties and responsibilities thereof. The person holding such office at the date of the transfer of said first thirty (30) shares of stock is to vacate the same and make possible the election of second party.

"Sixth. On or before November 15, 1926, second party is to pay said escrow agent the second $2,000, the same to be delivered to the first party when first party has delivered to second party an additional thirty (30) shares of said stock and the same have been transferred to second party on the stock books of said bank and new certificates therefor duly issued to second party.

"Seventh. On or before January 15, 1927, the balance of said purchase price, $8,000, is to be delivered by second party to said escrow agent and by said agent delivered to first party, when first party has duly assigned and delivered the remaining one hundred ninety (190) shares of said stock, and the same have been duly transferred on the stock records of said bank and new stock issued to second party.

"Eighth. No interest shall be paid by second party on any of the deferred payments.

"Ninth. It is agreed that a majority of directors of said bank must indorse their approval of this sale on this contract and therein consent to the same and agree that the conditions as to membership on the board of directors and election to the vice-presidency shall be carried out by said board of directors in conformity to provision of this contract."

Following the contract on the same instrument a majority of the officers and directors of the Farmers State Bank consented in writing to the transfer and agreed to elect Killeen director and vice-president. In addition to signing the contract, Killeen on the same day gave a bond for performance on his part. Four days later, October 6, 1926, Killeen procured from the First State Bank of North Bend a certificate of deposit for $2,000 and afterward indorsed it to Doran and turned it over to the Farmers State Bank in compliance with the escrow. Killeen also executed a note for each of the other payments and the notes were likewise left with the depositary in charge of the escrow. Doran assigned and delivered the first block of 30 shares. October 13, 1926, the state department of trade and com-

merce notified the Farmers State Bank that the transfer of stock from Doran to Killeen would not be permitted. The notice contained instructions not to allow any transfer of stock on the books of the company and forbidding "any party to enter into the bank in an executive capacity" without leave and approval of the department. A copy of this notice was mailed to and received by Doran. Killeen immediately stopped payment of the draft.

Killeen is plaintiff herein and Doran, the First State Bank of North Bend, the Farmers State Bank of York, Clarence G. Bliss, secretary of the department of trade and commerce, Van E. Peterson, secretary of the guaranty fund commission, and the sureties on Killeen's bond were made defendants. The petition contains pleas that plaintiff complied with the terms of his purchase and that Doran made default, failed to transfer and deliver the shares of stock as agreed, refused to put plaintiff in possession of the Farmers State Bank, attempted to convert to his own use the proceeds of the certificate of deposit, and did not return the paper received by him as the consideration. Plaintiff prayed for the return of the certificate of deposit, or, if not returned, for judgment against the First State Bank of North Bend for the amount due thereon, and for the return of his notes and his bond.

In an answer and cross-petition Doran admitted the making of the written instruments pleaded in the petition; alleged that he performed on his part his obligations under the contract of sale or tendered performance thereof; that plaintiff made default and, with the sureties on his bond for performance, became liable to Doran on the notes aggregating $10,000 with interest; that the First State Bank of North Bend refused to pay him the amount due on the certificate of deposit. In the cross-petition Doran prayed for judgment in the sum of $10,000 and interest on the notes and bond, for judgment against the First State Bank of North Bend for the amount due on the certificate of deposit and for other equitable relief.

The First State Bank of North Bend admitted that it

held the deposit of $2,000 and prayed for a direction as to whom it should be paid.

The Farmers State Bank of York pleaded that the notes and the bond were left in its custody with the escrow, disclaimed any interest in them and tendered them to the district court subject to its order.

Upon a trial of the cause the district court found the issues in favor of the plaintiff, including findings that plaintiff was entitled to a rescission and that Doran's cross-petition should be dismissed. From a decree in favor of plaintiff Doran appealed.

On appeal Doran argued that plaintiff was first in default and that consequently he was not entitled to a rescission of the contract of purchase, citing *Te Poel v. Shutt,* 57 Neb. 592, and *Pryor v. Hunter,* 31 Neb. 678, to the effect that a contracting party who is unwilling to perform his part of the agreement is not entitled to a rescission. The applicability of this rule depends on the facts. The parties to the contract provided in it for an "escrow." That term was used in its technical sense in connection with the terms on which the stock was bought and sold. In that sense it has been defined as follows:

"An escrow is a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee." 10 R. C. L. 621, sec. 2.

The escrow itself implied conditions not performed by Doran when the contract was signed. The contract provided for payments of the purchase price when Doran complied with conditions subsequently specified in the written instrument. Doran agreed to sell what amounted to a controlling interest in the bank. That was what plaintiff agreed to buy—a controlling interest in a commercial state bank in actual operation. This was contemplated by both parties. In compliance with his agreement plaintiff pro-

cured and indorsed to Doran a certificate of deposit for the initial payment of $2,000 and left it with the depositary in charge of the escrow. Doran complied with the condition to transfer the first block of 30 shares. His own testimony is that the certificate of deposit was delivered for him to his son-in-law, C. P. Hildebran. "I think I ordered him to send it to the Live Stock National Bank for credit" were the exact words of Doran while testifying. He therefore received the certificate of deposit and attempted to procure the proceeds thereof. It was payable six months after date and on its face stated that it was nonnegotiable. Before it was cashed plaintiff stopped payment. This seems to be regarded the first default upon which Doran relies to prevent a rescission, but it did not amount to such a default. It was justified by the circumstances. The reserve of the Farmers State Bank was nearly exhausted and it held unauthorized paper to the extent of $6,000 or more. It was at the time in a failing condition that might subject it to the control of the state department of trade and commerce. October 15, 1926, 13 days after the contract was signed, the secretary of the state department of trade and commerce made an order which prevented Doran from transferring his stock in compliance with his agreement. Doran did not restore his bank to a condition warranting a withdrawal of the order preventing the transfer. Officers of the state took charge of its affairs December 16, 1926. It was after the order preventing the transfer to plaintiff that the latter stopped payment of the certificate of deposit. He was not then required by law or equity to make payments for stock and for a controlling interest which could not be transferred to him pursuant to his contract of purchase. On the contrary, he was entitled to a rescission and to the return of the certificate of deposit, the notes and the bond for performance. In those particulars the findings of the district court in favor of plaintiff were correct. No other conclusion could be sustained under the pleadings and evidence.

The personal judgment against Doran for the amount

due on the certificate of deposit, however, seems to be erroneous, not being within the pleadings and the evidence. It is therefore reversed. Otherwise, the judgment of the district court is affirmed, plaintiff to pay his own costs in the supreme court.

AFFIRMED IN PART, AND REVERSED IN PART.

Note—See Escrows, 21 C. J. 865 n. 1; 10 R. C. L. 621; L. R. A. 1916A, 502; 10 R. C. L. 635; R. C. L. Perm. Supp. 2714.