Vittor et ux. *v.* Szymanski et ux., Appellants.

Argued January 22, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*John Memolo,* with him *David Schwartz,* for appellants.

*George Morrow,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 23, 1936:

Appellees, Louis Vittor and wife, agreed to exchange their farm property, which was subject to a mortgage of $3,200 and another encumbrance, for a city property belonging to appellants, Michael Szymanski and wife, and $600 cash, $500 of which was paid by note on the execution of the agreement. On default or breach of the contract, the deposit of $500 was to be forfeited. The farm was worth $7,300 and the city property $6,000. The Vittors were to mortgage the town property for $2,500 and with $1,900 from that mortgage together with the $1,300 owed by the Szymanskis for the higher value of the property which they were to obtain, the mortgage of $3,200 on the farm property was to be satisfied and the considerations equalized. Appellees surrendered possession of the farm to the Szymanskis and delivered a deed to them as provided in the agreement. The one encumbrance was satisfied but the mortgage of $3,200 remained. Appellants refused to convey the town property and placed a mortgage on it and another property for $3,000 but did not satisfy the farm mortgage with that money. Vittor and wife filed a bill in equity for specific performance and also asked that appellants be required to accept a mortgage for $2,500 and provide the money to be borrowed thereon, in accordance with the original agreement. A decree was entered requiring appellants to convey and appellees to assume $1,900 of the $3,000 mortgage given by appellants, provided that if appellants paid $600 to appellees, the latter were to assume $2,500 of the mortgage. This appeal followed.

Appellants contend that the agreement provided an exclusive remedy in case of breach or default through forfeit of the deposit. Apart from the fact that appellants' objection to carrying out their part of the agreement comes too late, since made after receipt and acceptance of appellees' deed for the farm, the fact that a contract is for the exchange of real estate ordinarily shows of itself that the parties intend to be satisfied with nothing less than an exchange of title unless it clearly states otherwise. This contract indicates that the parties were not to be given an alternative right of conveying or paying a forfeit. The contract provides that on breach by appellants, their "deposit of five hundred dollars (given in the form of a judgment note) is hereby forfeited." Calling the initial payment a "deposit" demonstrates that ultimate payment and exchange of properties was intended. Appellees were "to give a first mortgage on the property at 422-424 Taylor Street," and this could be done only after a conveyance of property by appellants so that appellees could give the mortgage. The clause providing for forfeiture of deposit in event of breach was a provision to secure performance rather than to give absolution for nonperformance. Similar clauses in analogous cases have been so construed.

Thus in *Gross v. Salsich*, 144 Wis. 419, defendant was to exchange properties with plaintiff and agreed "that in case I should not be able to give you then the deed I shall pay you the sum of five hundred dollars ($500) on the 21st day of December, 1905." Defendant did not offer to convey until December 28, 1905. Plaintiff sued for the $500. Of the promise to pay, the court said: "This provision of the contract was manifestly intended as security to indemnify plaintiff against loss in case it should turn out that defendant could not convey a merchantable title to the lot. We think it clear that this is the true construction of the agreement between the parties and that it was not contemplated that the agreement be in the alternative for the conveyance of the lot,

or the payment of $500 in case defendant were unable to convey a good title. . . . If the defendant had refused to convey under any circumstances, the situation would be quite different."

It seems to be well established that where a contract for the sale or conveyance, rather than the exchange of land, stipulates for payment even of "liquidated damages" in case of default, such stipulation does not preclude the remedy of specific performance: *Nolan v. Kirchner,* 98 N. J. Eq. 452; *Hooker v. Pynchon,* 8 Gray (Mass.) 550; *Asia Investment Co. v. Levin,* 118 Wash. 620. Since this is the rule where a conveyance of land by only one party is contemplated, it applies even more forcefully where an exchange of properties is involved.

In *Kettering v. Eastlack,* 130 Iowa 498, the parties contracted to exchange lands and defendant agreed in addition to pay $7,100. Either party who failed to perform was to forfeit "the sum of $500 as liquidated damages." Specific performance was granted. As to the damage clause, the court said: "If the contract were in the alternative, so that the defendants had the option of conveying or paying a stipulated sum by way of liquidated damages, then, no doubt, it would be improper for a court of equity to interfere [authorities]. But the mere fact that liquidated damages are provided for as a part of the contract does not convert it into an optional contract under which the obligor is entitled to relieve himself from the duty of specific performance by paying the liquidated damages. Where it is apparent that the intention was that the obligor convey, and the provision for damages or penalty is simply a means of securing conveyance, the obligor cannot relieve himself from the duty to convey, which equity will enforce, by tendering payment of the penalty or damages. . . . It is plain in this case that the contract was to convey, and not primarily to pay damages."

Appellees agreed to convey their farm property "free from all encumbrances" and the agreement, which was

dated March 1, 1930, further provided: "The conveyancing and granting of the deeds aforesaid and all matters incidental thereto are to take place within ninety days of the date hereof." Appellants contend that appellees are not entitled to specific performance because the deed given by the latter was not free from encumbrances. There was in fact a mortgage of $3,200 on the farm (the other lien being satisfied) when appellants accepted a deed. The agreement was not clear as to the purpose of the $2,500 mortgage, but the testimony shows that they were to provide the money to satisfy the $3,200 mortgage. The covenants in the agreement were not independent but mutual and dependent as stated in *Pead v. Trull*, 173 Mass. 450, where HOLMES, J., construing a contract to exchange lands, declared the presumption is that, in an exchange, performance on the two sides is to be concurrent. Appellees' failure to tender a deed free from encumbrances is due to appellants' failure to place them in a position to remove the $3,200 mortgage.

Appellants urge that the Vittors were in default in tendering a deed six days after the ninety-day period for performance had elapsed. Whatever weight such contention might have had if made promptly, the argument seems unavailing in view of appellants' conduct, for they received and accepted the deed for the farm, it was recorded as a conveyance to them, and one of appellants took possession and worked the farm. What appellants really wanted to do was to take the farm, try out farming and if they liked it, keep the property; if they did not like it, they would turn the farm back, meanwhile retaining the town property. Such conduct waived appellees' delay. Moreover, time was not stipulated to be of the essence of the contract.

In a contract for the exchange of properties, time is not of the essence of the contract unless expressly stated so to be. Substantial compliance with clauses in the agreement relating to time of performance is all that is required, and failure to perform on time will be excused

when such failure is caused by the other party to the contract: *Evans v. Gerry,* 174 Ill. 595. Courts of other jurisdictions have recognized that similar contracts, oral and written, for the exchange of lands may well be specifically enforced even though, as in the instant case, there was not a strict compliance with certain terms of the agreement: *Te Poel v. Shutt,* 57 Neb. 592; *Brennan v. Ford,* 46 Cal. 7; *Goodlett v. Hansell,* 66 Ala. 151; *Evans v. Gerry,* supra; *MacDonald v. Bach,* 64 N. Y. S. 831.

Appellants complain that oral testimony should not have been received to delimit the size of the town lot and to explain the consideration. They agreed to convey their property located at 422-424 Taylor Street, and appellees agreed to give a first mortgage on it in the sum of $2,500. It is now contended that the decree of the court below should be reversed because the agreement involved an entire tract of land 63x135 feet designated as "422-424 Taylor Street" while the court granted specific performance of a portion of this tract 36x135 feet. There was ample evidence to the effect that the parties intended to exchange that part of the above property which had on it a double house. Appellants' counsel agreed of record "that the property in Taylor referred to in the agreement consisted of a double dwelling house together with one-half of the lot in width or the width being 36 feet in front and the same in the rear times the full depth of the lot." And the court found: "The land that the plaintiffs were to receive was a deed for thirty-six (36) feet of the sixty-three- (63) foot lot and not one-half thereof, which thirty-six (36) feet includes the double dwelling now occupied by the plaintiffs and known as 422-424 Taylor Street in the said Borough of Taylor."

During the course of the hearing the real purpose of giving a $2,500 mortgage appeared. Appellees amended their bill and it is obvious that the amendment was proper. The attorney who acted for appellants and drew

the agreement and three other witnesses testified to the real purpose of the $2,500 mortgage and the size of the lot. The attorney stated that he had mistakenly omitted to incorporate all the understanding in the agreement; in this he was corroborated.

We have recognized for a long time that written agreements may be reformed by oral testimony where the testimony is, as here, clear, precise and indubitable. In *Safe Deposit & Trust Co. v. Diamond Coal & Coke Co.*, 234 Pa. 100, we said: "Wherever a written instrument fails to express the intention of the parties by reason of fraud, accident or mistake the injured party may invoke the equitable jurisdiction of the court which, by the aid of parol testimony, may reform it. This is the well-settled doctrine of our State as has frequently been declared by this court."

Where the effect of such testimony is to reform the contract by explaining the consideration or by altering the description of the property, since the statute of frauds relating to lands requires "both the consideration and the subject of the agreement to be definitely defined," such reformation reduces the contract for exchange of lands to a parol contract which ordinarily would be incapable of being specifically enforced. Thus in *Safe Deposit & Trust Co. v. Diamond Coal & Coke Co.*, supra, where the coal company as vendee of a tract of coal land asked that the contract of sale be reformed to make the boundaries of the tract certain and then asked for specific performance, it was held that the contract as reformed would be oral. This court said: "Whether a written contract is reformed on the ground of fraud, accident or mistake, the effect is the same, the whole contract is in contemplation of law reduced to a parol agreement which the statute of frauds declares to be void and incapable of being specifically enforced so as to compel the transfer of title to real estate."

In *McCann v. Pickup*, 17 Phila. 56, the vendee asked for reformation of an agreement for exchange of prop-

erty. By mistake, the defendant's property was improperly described as "adjoining" premises of plaintiff, when in fact it was six squares away. A demurrer to the bill was sustained by the Philadelphia Common Pleas Court. The court distinguished between parol evidence to correct the written instrument and parol evidence which would make the contract "include obligations or subject-matter to which its written terms will not apply," or "establish an oral agreement independently of the writing." Rectification by use of parol evidence of the latter type, said the court, is in conflict with the statute of frauds.

But while the reformation here involved may make the contract of exchange an oral contract, it does not necessarily follow that equity cannot specifically enforce it. In Pennsylvania, it has been held that the vendor of land under an oral contract with a vendee who goes into possession and pays part of the purchase price may enforce the contract: *Fay's Est.*, 213 Pa. 428. So also, a vendee under an oral contract for sale of real estate may enforce specific performance where he has taken possession and paid the purchase price: *Tressler's Est.*, 66 Pa. Superior Ct. 547. In the latter case, it was said that it may be "accepted as a general rule that possession under a contract of sale, and payment of part of the purchase price, will entitle the vendee to specific performance: *Haslet v. Haslet*, 6 Watts 464; *Jamison v. Dimock*, 95 Pa. 52; *Fay's Est.*, 213 Pa. 428." The testimony shows that appellees deeded their farm property to appellants, that one of them worked on the farm, made certain improvements and that appellees were given possession of the appellants' town property. Taking possession and giving a deed would seem to be sufficient part performance to merit specific performance of the agreement even though that agreement is oral.

The appellees have done all that they could possibly do in performing their obligation under the contract. The appellants have not only failed to perform but have

attempted to overreach appellees. Such conduct is inequitable and unjust, and we find no legal error in the decree of the court below.

Decree affirmed at appellants' cost.