## Land v. Cloister Pure-Spring Water Co.

*C. Clark Hodgson, Jr.,* for plaintiffs.
*Louis Farina,* for defendant.

BROWN, *J.,* November 7, 1975—In this case, presently before the court are preliminary objections of defendant to the complaint of plaintiff. Included in the preliminary objections was a motion for a more specific pleading. This motion has been abandoned.

This is an action in equity to compel specific performance of a lease with an option to purchase the land on which plaintiffs now, and have for the past five years, operated their spring water bottling plant.

On September 23, 1970, plaintiffs and defendant executed a lease for approximately six acres on which there was erected a building housing some machinery and the plumbing for operating a spring water bottling plant. Plaintiffs assumed possession and operated as tenants for five years. The lease contained an option to purchase the premises for the sum of $45,000. Throughout the lease, plaintiffs had the obligation to maintain and repair the machinery and equipment. In fact, they spent $74,000 for repair and maintenance of the equipment plus modifications and improvements to building and equipment therein. On at least three occasions throughout the last two years of the lease, plaintiffs and defendant had discussions wherein plaintiffs communicated their intention to acquire the premises pursuant to the option.

On July 15, 1975, plaintiffs hand-delivered to defendant a writing giving notice of plaintiffs' "intention to exercise" the option. On July 28, 1975, plaintiffs received from defendant a letter in which they were advised that they had not effectively exercised their option. Plaintiffs have at all material times been ready, willing and able to acquire the premises.

The complaint was filed on August 12, 1975; service was effected on August 20, 1975. On August 29, 1975, defendant filed preliminary objections in the nature of a demurrer and for a more specific statement, the latter as heretofore stated having been abandoned.

The preliminary objections of defendant to the complaint of plaintiffs are as follows: A. Pursuant to paragraph sixteen of the agreement the exer-

cise of the option to purchase must be in writing and delivered 90 days prior to the expiration of the original term. B. The agreement on its face expires on September 30, 1975, and accordingly, to be effective the option must be exercised prior to July 3, 1975. C. Plaintiffs' complaint fails to allege an exercise of the option in writing prior to July 3, 1975.

In their brief and argument plaintiffs contend that the lease does not require plaintiffs to communicate in writing their "intention to exercise" the option before July 3, 1975, or suffer the loss of their rights. This argument goes to the merits of plaintiffs' action and will not be considered in this opinion which is confined to the validity of defendant's demurrer. Rather, the court will now decide if the complaint pleads all the elements for a cause of action for specific performance, because in this posture of the case the only problem before the court is the validity of the demurrer.

Defendant's preliminary objections in the nature of a demurrer attack the sufficiency of the complaint insofar as it seeks to invoke the equity jurisdiction of the court to afford the remedy of specific performance. In this posture the allegations of the complaint must be taken as true, as well as all inferences reasonably deductible therefrom: Kutsenkow v. Kutsenkow, 414 Pa. 610, 613, 202 A.2d 68 (1964); Hyam V. Upper Montgomery Joint Authority, 399 Pa. 446, 449, 160 A.2d 539 (1960). The allegations must also be measured to this standard: " ' . . . when the sustaining of defendants' preliminary objection will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained *only in cases which are clear and free from doubt.*' "

Schrader v. Heath, 408 Pa. 79-83, 182 A.2d 696 (1962). (Emphasis supplied.)

In this setting this court must consider whether the elements justifying the remedy are pleaded. The general rule is stated by Corbin, who distinguishes between an option contract and a lease containing an option to purchase. With respect to the latter he writes that the plaintiff ". . . should not be compelled to forfeit (leasehold) improvements to the lessor merely because he has forgotten to give notice until a few days after the specified time is expired. If the delay is great, or if the lessor has reasonably changed his position, the decision may properly be otherwise." Corbin, Contracts, §1.77.

The equity jurisprudence of Pennsylvania would appear to require that a complaint seeking specific performance aver the following facts: (a) The existence of a contract involving real estate; (b) Performance by the plaintiff or the tender of performance, that is, that plaintiff is ready, willing and able to perform: Detwiler v. Capone, 357 Pa. 495, 504, 55A.2d 380 (1947); (c) That plaintiff will suffer a forfeiture whereas defendant will experience no hardship if the contract is performed: Restatement Contracts §374; (d) That the rights of third persons have not intervened nor has the defendant changed his position following the delay: Restatement Contracts §367(b); Ginsburg v. Collins, 84 Pa. Superior Ct. 221 (1924).

The court determines that all of the foregoing elements are present in the amended complaint.

The complaint indicates that the parties' rights arise out of a written lease for real property pursuant to a contract.

Plaintiffs have alleged that they are ready, willing and able to consummate the purchase, and

would, but for the refusal of defendant. The amended complaint clearly avers that plaintiffs will suffer a forfeiture. They have been in possession of the bottling plant for almost five years. They have expended $149,000 in anticipation of their owning it. In addition, they have paid $60,000 in rent for the privilege of occupying the premises and the right to acquire the property by option. No court in equity could require that they forfeit this investment all for the lapse of twelve days with respect to a nonmaterial term.

In a case in which plaintiff was 39 days late in exercising a renewal option in a lease the court in granting plaintiff relief made the following pertinent statement which applies here with equal force:

" 'A court of equity will, however, grant relief to a tenant who has failed to give the required notice if his delay has not been so great as to constitute laches, and the failure to give notice was attributable to an honest mistake where the tenant has a valuable interest in the property and the delay has caused no injury to lessor.' " Sosanie v. Pernetti Holding Corp., 115 N. J. Super. 409, 279 A.2d 904 (1971).

There is no indication that defendant has suffered any hardship except that it is no longer willing to sell. While defendant has not filed an answer, Exhibit "C" indicates that there has been no change in position by defendant and no intervention of the rights of third parties. The last paragraph of Exhibit "C" invites plaintiff to engage in new negotiations (suggesting that clearly defendant is using the twelve day period as a means of making itself a better bargain). The paragraph concludes that it is the intention of defendant to

look for a new tenant after September 30, 1975. Defendant's willingness to negotiate with plaintiffs, and the fact that it would look for a new tenant demonstrate that there is no hardship to defendant and that the rights of third parties did not intervene, making it inequitable to compel defendant to live up to its side of the bargain.

Finally, the convergence of all these principles into one case in which the facts are similar (if indeed, the facts of one case in equity can ever be similar to another) is Flourtown Car Wash v. Comet Carwash, 53 D. & C. 2d 731 (C. P. Montg. Co. 1970). There, plaintiff and defendant had executed a lease pursuant to which plaintiff was to occupy defendant's premises as a carwash. The lease gave plaintiff an option to purchase defendant's assets or to acquire its common stock. The option called for plaintiff to give written notice of its intention to exercise either option 90 days prior to the expiration of the lease which was on or before January 30, 1970.

The option was exercised eight days late by a writing delivered to defendant; nevertheless, the court ordered specific performance.

The evidence tended to show that the parties had oral communications respecting the economic and tax consequences of the two options prior to the expiration of the ninety days. Furthermore, there was no evidence that defendants sustained a loss as a result of the failure to receive a timely notice.

The court held that since time was not of the essence (absent a specific provision to that effect): ". . .the mere failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract."

"Clearly, time was not of the essence insofar as the exercise of this option was concerned. There is no statement in the lease that it should be. . ." Id. at 734-35.

Here it has been alleged that plaintiffs notified defendant of their intention to acquire the property on three separate occasions all of which were within the requisite period and one of which was the day before July 3, 1975. It is further alleged that defendant acknowledged that they understood that this was plaintiffs' intention.

Plaintiffs submit the option-lease calls for the communication of plaintiffs' intention respecting the acquisition of the property to be in writing. However, the communication of an intention is a collateral matter as distinguished from actual exercise of the option. Thus, oral communication of plaintiff's intention which occurred on three separate occasions or a written communication, albeit slightly delayed might be deemed sufficient to fulfill the obligation of plaintiff with respect to a nonmaterial term.

Weight is rendered to this position in view of the fact that the pleadings here, as well as the docket entries, indicate the depositions of Robert Mohn and Richard E. Mohn, the latter being the president of defendant-corporation, have been taken although the transcription thereof has not yet been lodged. These depositions may indicate a sufficient compliance with the notice to exercise the option on the part of plaintiff. Regardless of whether this is developed in the depositions the court here feels that the sustaining of the demurrer of defendant in this preliminary stage of the action is not warranted as heretofore stated. Defendant's preliminary objections should only be

sustained in cases which are free and clear of doubt.

And now, November 7, 1975, for the foregoing, reasons the demurrer of defendant to the complaint is dismissed with leave to the defendant to file a responsive pleading to the complaint within 20 days from this date.

## OPINION

A full hearing has been held in this matter and the Chancellor will now dispose of this case on its merits.

In view of the lengthy findings of fact, the Chancellor feels no lenghty discussion is necessary in this case. However, two cases are worthy of note and appear controlling. In Flourtown Car Wash v. Comet Carwash Corp., 53 D. & C. 2nd 731 (C. P. Montg. Co. 1970), plaintiff and defendant had executed a lease pursuant to which plaintiff was to occupy defendant's premises as a car wash. The lease gave plaintiff an option to purchase defendant's assets or to acquire its common stock. The option called for plaintiff to give written notice of its intention to exercise either option 90 days prior to the expiration of the lease which was on or before January 30, 1970. The option was exercised eight days late by a writing delivered to defendant. Judge Ditter ordered specific performance. He was motivated by a record which tended to show that the parties had had oral communications respecting economic and tax consequence of the two option prior to the expiration of the 90 days. The court held that since time was not of the essence (absent a specific provision to that effect in the agreement): ". . . the mere failure to perform on the date mentioned in a contract is not per se a

breach which wholly destroys the contract." Id. at 734. See also Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312, 124 A.2d 412 (1956) (land contract); Reilly v. City Deposit Bank & Trust Co., 322 Pa. 577, 185 atl. 620 (1936).

"Clearly, time was not of the essense insofar as the exercise of this option was concerned. There is no statement in the lease that it should be. . . Flourtown, supra. at 734-35.

In Vittor v. Szymanski, 321 Pa. 345, 184 atl. 27 (1936), our Superior Court held that the consequence of an untimely performance by plaintiff, where time is not of the essence, does not sacrifice all his rights or the loss of his bargain; rather, it is that "[s]ubstantial compliance with clauses in the agreement relating to time of performance is all that is required.. . ." The rationale for the rule is: "Generally, as to land contracts, time is not of the essense for the reason that no substantial injury will normally result from the breach of a time term and it is therefore just to enforce the contract with due allowance for any damage, rather than discharge the party aggrieved by the failure to perform strictly on time. National Exhibition Co. v. Ball, 189 S.O. 2d 489 (Fla. 1962) quoted with approval in Sosanie v. Pernertti Holding Corp., 115 N. J. Super. 409 (1971)."

While lengthy briefs submitted by plaintiffs and defendant cite numerous cases for the support of their respective positions, it is felt that in view of the totality of the circumstances, and the case law in Pennsylvania and other states, strong support is given the position of plaintiffs in this proceeding. What especially impresses the Chancellor is the fact that on the day before the last day on which to give the written notice of the exercise of the option,

to wit, on June 2, 1975, plaintiff called Mohn of defendant company to arrange for an appointment for the purpose of deciding how plaintiffs were going to take over the bottling plant. Mohn replied that he was busy with inventory and requested a postponement of any meeting until the following week and they agreed to a meeting on July 15, 1975, which meeting was held and the written notice given, twelve days after the deadline. It is clear to the Chancellor that had Mohn given Land an appointment on the second or third day of July 1975, a compliance with the written notice would have occurred and it is significant to the Chancellor that Mohn deliberately postponed the meeting knowing that a meeting on July 15, 1975, would be too late to comply with the strict 90 day written notice.

In addition, it is perfectly clear to the Chancellor that defendant was in no way prejudiced by the twelve-day period as indicated in the findings of fact.

The Chancellor feels that no further discussion is needed here to justify the Conclusions of Law and the Decree Nisi he is about to enter.

## DECREE NISI

And now, December 16, 1976, upon consideration of plaintiffs' complaint, the evidence adduced at trial, and for the reasons set forth in this court's adjudication, it is hereby ordered, adjudged and decreed as follows:

(a) Plaintiffs' prayer for specific performance of the contractual option to acquire certain premises, which is contained in Paragraph sixteen of a lease between the parties dated September 23, 1976, be and it is hereby granted;

(b) Defendant is hereby directed to deliver to plaintiffs with 60 days of the date of this decree becomes final, a deed to the premises described in the lease and plaintiffs shall otherwise comply with the settlement obligations as contained in the said lease.

(c) The obligations of the parties under any other paragraph of the said lease are unaffected by this decree; and

(d) The prothonotary, in accordance with the Rule of Equity Procedure, shall give notice to counsel, and unless exceptions are filed within 20 days after notice of filing this adjudication the decree nisi will become a final decree as of course.